**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JASON WILLIAM KING,**                **CASE NO. 2:09-cv-984**
                                          **CRIM. NO. 2:06-cr-165**
        **Petitioner,**                 **JUDGE MARBLEY**
                                          **MAGISTRATE JUDGE KEMP**

**v.**

**UNITED STATES OF AMERICA,**

        **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a federal prisoner, has filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ and supplemental response, petitioner's response and reply to the supplemental response, and the exhibits of the parties, as well as the record in the underlying criminal case.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

> In an effort to satisfy its evidentiary burden at trial in this matter, the government offered the testimony of informant Martavious Arnold and of four officers of the Columbus (Ohio) Police Department. In his testimony, Arnold first conceded that he had agreed with federal prosecutors to testify against King in exchange for a reduction in

his own sentence in an unconnected drug-trafficking case from at least 20 years in prison to a mere three years' incarceration**.**

The informant also asserted that he had known Jason King for more than ten years, and that he agreed with the police to attempt to purchase drugs from King. In furtherance of that subterfuge, Arnold telephoned the defendant on June 1, 2005, and expressed a desire to meet King at a specified location to buy an ounce of crack cocaine. After making those arrangements, Arnold contacted Detective John Whitacre of the Columbus Police Department to relate to him the plan for the drug purchase. When Whitacre arrived at the scene, the detective searched Arnold to ensure that the informant was not already in possession of other drugs or money, gave Arnold $760 to purchase the crack, and set up a surveillance position in an unmarked van to view the transaction. Additional police officers also assumed positions around the perimeter of the area so as to be able to follow the defendant when he departed the location of the drug buy.

Arnold and Whitacre each testified that defendant King eventually drove to the predetermined spot in an older model "orange-ish, brownish" sedan. Arnold entered that vehicle, paid the defendant $760, and received in exchange ten dollars change and a bag containing 30.8 grams of crack cocaine. After the seller drove away from the area, Arnold, who had remained in Whitacre's sight throughout the transaction, returned to the van and gave the detective the drugs and the change he had received from King. Whitacre alerted his fellow officers when the "orange-ish, brownish" car left the area and those other officers took turns following the car, maintaining visual contact with it until stopping it and asking for the driver's identification. The officer who made the traffic stop identified King in court as the driver and sole occupant of the vehicle, stated that King offered him a driver's license issued to "Jason King," and further testified that a check on the vehicle's temporary tags indicated that the owner of the vehicle was the defendant, Jason King. After obtaining that information, the officer permitted King to proceed on his way without issuing a ticket or other citation.

On July 19, 2005, Arnold again contacted King by phone and agreed to meet him once more at the location of the prior drug transaction in order to purchase another ounce of crack cocaine, this time for $700. The informant then contacted Detective Whitacre before the defendant's arrival, underwent another search of his clothes and person by Whitacre, and again was directed to remain in sight of the van parked across the street, from which the detective would be observing the proceedings. For this second transaction, backup police officers parked in a different vehicle approximately 200 feet away from the van and operated a hidden video camera in an effort to record any illegal activities.

When the defendant arrived to meet with Arnold, King was seated in the front passenger seat of a teal-colored Honda driven by an unidentified woman. Arnold nevertheless stepped into the back seat of the car, gave the defendant the money provided by Whitacre, "and got another ounce" of crack cocaine from "Jason" in exchange. Although the videotape filmed from the hidden location admittedly never showed the informant's hands and never showed the defendant reaching into the backseat to hand illegal drugs to Arnold, Detective Whitacre, who observed the exchange from a different, much closer vantage point, testified unequivocally, "I saw Mr. Arnold hand money through the front, through the middle of the front seats. And then I saw Mr. King pass what looked to be a bag or small object to the back seat."

At the conclusion of the transaction, Arnold exited the Honda and returned to Whitacre's van to transfer the purchased drugs to the detective. Stipulated testimony at trial indicated that the crack cocaine obtained in this second transaction between Arnold and King weighed 27.2 grams. Nevertheless, neither Whitacre  nor any of the backup officers in the area at the time followed the Honda or attempted to stop the defendant and the driver. According to Whitacre, he did not request any such action "[b]ecause I knew who Mr. King was. I

3

expected to see Mr. King in the future in the same manner....”

> Based upon this testimony, the jury concluded that
> King was guilty of distributing at least five grams of
> crack cocaine both on June 1, 2005, and on July 19, 2005.
> The district court denied the defendant's motion for
> judgment of acquittal that it had held under consideration
> pending the jury's verdict and sentenced King to concurrent
> prison terms of 120 months.

*United States v. King,* 288 Fed.Appx. 253, unpublished, 2008 WL 2967655 (6th Cir. August 4,

2008).

On April 4, 2007, petitioner was sentenced to a term of 120 months imprisonment

on counts one and two, to run concurrently, plus five years supervised release.  Doc. No.

35.  Petitioner filed a timely appeal, in which he asserted that the evidence was insufficient

to sustain his convictions.  *See United States v. King, supra.*  On August 4, 2008, the United

States Court of Appeals for the Sixth Circuit affirmed the District Court’s judgment.  *Id.*

By order dated September 30, 2008, petitioner’s motion to reduce his sentence to 96 months

of incarceration was granted.  Doc. No. 57.

On October 30, 2009, petitioner filed the instant *pro se* motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. §2255.  He asserts the following, recited here

verbatim:

> Ground one: Counsel was ineffective in voilation of
> King 6th Amendment Right.
>
> Counsel was ineffective for failing to object to a Juror
> who clearly indicated, she divorced her husband
> because he was hooked on crack, this apparent bias
> deprived King of his Sixth Amendment right to a
> fair and impartial Jury.  See U.S. Const. Amend. VI., and
> Appllant counsel was ineffective for failing to raise this

issue on direct Appeal.

Ground two: Counsel was ineffective in voilation of King
6th Amendment Right.

Counsel was ineffective for failing to present the true facts
about the police report, but at trial she presented the fact
differently about the police report to count 1, resulting in a
fundamental unfair trial, and ineffective for not call alibi
witness in the defense in violation of the 6th Amendment.

Ground three: Counsel was ineffective in violation of King
6th Amendmend Right.

Counsel was ineffective for failing to investigate Subpoena,
alibi witnesses to testify at trial to dispute count 2 of the
indictment.

Ground four: Counsel was ineffective in voilation of King 6th
Amendment Right.

Counsel was ineffective for not calling Mr. King to testify in
his defense at trial, and Appellate counsel was ineffective
for failing to argue on Appeal that the district court erred
in not considering the disparity between crack cocaine and
powder cocaine under § 3553 (a) factors in light of the Supreme
Court's holding in **Kimbrough v. United States**.

In his affidavit in support of his petition, petitioner also asserts the following stated

exactly as it appears in the affidavit:

GROUND 5) Affiant attest, that is Appellant Attorney Gary
W. Crim was ineffective for not raising the issues of
Kimbrough v. Untied States, as instructed by Affiant while my
appeal was pending Appellant Counsel ignored the request.

6) In addition, Affiant attest, that is, on several occasion during
the pretrial stages me and Attorney Menashe, were not
communicating effectively to prepare for trial. Affiant
wrote letters to the trial judge addressing the problems

5

> that I and Attorney Menashe were having. A hearing was
> held on this very December 04, 2006. Docket Entry 24.
> Affiant attest, that is I and Attorney Menashe were meeting
> on one particular occasion I ask her what was the trial
> strategy or defense ideals. Attorney Menashe informed
> me Affiant that she did not have a particular strategy or
> defense, but would present the strategy or defense
> on the trial date. Affiant was confused because she
> never contacted any witnesses as I instructed, and I
> did not know what was going to happen in my defense.

It is the position of the respondent that petitioner's claims are without merit.

Respondent has submitted the affidavit of petitioner's trial counsel, Diane Menashe, in

support of its position.

### INEFFECTIVE ASSISTANCE OF COUNSEL

The right to counsel guaranteed by the Sixth Amendment is the right to the

effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The

standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel made errors so
> serious that counsel was not functioning as the counsel
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177

(6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court

must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.*, at 697.

## CLAIM ONE

Petitioner claims that his trial counsel was ineffective for failing to strike a biased juror. To maintain such a claim for the ineffective assistance of counsel, petitioner must show that the juror was actually biased against him. *Miller v. Webb*, 385 F.3d 666, 674 (6th Cir. 2004) *citing Hughes v. U.S.*, 258 F.3d 453, 459 (6th Cir. 2001). That is, "he must show through a review of *voir dire* testimony that a 'fair trial was impossible.'" *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009) *quoting Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002). As stated by the Sixth Circuit in *Hughes*,

> [a] juror's express doubt as to her own impartiality on
> *voir dire* does not necessarily entail a finding of actual
>  bias. The Supreme Court has upheld the impaneling of
> jurors who had doubted, or disclaimed outright, their own
> impartiality on voir dire.

*Hughe*s, 258 F.3d at 458. Further, under these circumstances, bias means actual bias, or "'bias in fact -the existence of a state of mind that leads to an inference that the person

will not act with impartiality.'" *Id.* at 463 *quoting United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997).

During *voir dire*, the juror at issue here initially expressed that serving as a juror would be "emotional," because she had divorced her husband over his substance abuse problem involving crack cocaine. However, upon further questioning, she stated that she would discharge her duties as a juror if she were selected to serve. A review of the *voir dire* testimony indicates that the juror stated as follows:

> THE COURT: Is there anything .. I know that this question might sound naive, but notwithstanding what happened to you as a result of your husband's drug use, can you judge Mr. King fairly and impartially?
>
> PROSPECTIVE JUROR: I want to say yes, but it will be emotional. It will take everything I have. I want to do the right thing but it is an emotional time.
>
> THE COURT: When was this?
>
> PROSPECTIVE JUROR: This was 1987.
>
> THE COURT: About 19 years ago. As a juror you have two responsibilities. Your first responsibility is to find what the facts are from the evidence presented here in court; your second responsibility is to take the law as I give it to you, apply it to those facts and determine whether the government has proved Mr. King's guilt beyond a reasonable doubt. Do you have any doubt that you can do that, discharge those two responsibilities?
>
> PROSPECTIVE JUROR: I can do it. I can do it. I can be fair. I will be honest.
>
> THE COURT: That's all we ask. These kinds of cases always open up old wounds and that's part of the

> challenge of being a fair juror. But people do it. If
> you tell me you can do it, I have no doubt.
>
> PROSPECTIVE JUROR: I can do it.

*Transcript of Jury Selection Proceedings, 55-57.*

According to Attorney Menashe's affidavit, based upon these statements, she made the strategic decision that there was no "legal basis for a challenge for cause." *Menashe Affidavit, p. 1.* The Court agrees. Based upon this exchange, petitioner has not shown that the court would have been required to excuse this juror for cause even if counsel had so moved. The juror's statements that she would carry out her duties as a juror are unequivocal and do not demonstrate any indication that she would have been unable to act with impartiality. In light of this, petitioner has failed to demonstrate that this juror was actually biased against him.

Additionally, Attorney Menashe states in her affidavit that, in deciding not to challenge this juror, she considered that this juror was only one of two African Americans in the entire venire and the only African American that, numerically, had a chance to be seated as a juror. *Menashe Affidavt, p.1.* Under all of these circumstances, counsel's failure to remove this juror does not constitute ineffective assistance.

Additionally, in Claim One, petitioner asserts that appellate counsel was ineffective for failing to raise this issue on direct appeal. The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97

9

(1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)); *see also Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)(outlining factors to consider in assessing a claim of ineffective assistance of appellate counsel).  However, "[d]efense counsel has no obligation to raise every issue argued by the defendant or to raise frivolous issues on appeal."  *Neeley v. United States*, 2008 WL 2558013 (E.D. Tenn. June 23, 2008).  No decision of the United States Supreme Court

> suggests... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also McFarland v. Yukins*, 356 F.3d 668, 710 (6th Cir. 2004)("the decision of which among possible claims to pursue is ordinarily entrusted to counsel's professional judgment.")

With respect to the issue of juror  bias, as discussed above, petitioner's claim that trial counsel was ineffective for failing to strike the juror was without merit. Consequently, appellate counsel cannot be found to have been ineffective for failing to raise such a claim on direct appeal.

## CLAIM TWO

Petitioner asserts that he was denied the effective assistance of counsel because

Attorney Menashe did not utilize or present the police report in the defense's possession as he instructed and she "deliberately misrepresented the facts different during the trial about the Affiant not being pulled over by the police, where the police report says otherwise, and misleading the jury as to Count 1." *Petitioner's Affidavit, p. 2.*

Petitioner does not identify with any specificity the alleged misrepresentations made by Attorney Menashe. To the extent that petitioner is suggesting that Attorney Menashe somehow indicated that he was not pulled over by the police, there is no support in the record for this claim. With respect to Count 1, there is significant testimony in the record about petitioner's being stopped by Officer Dungey for a "field interview" on June 1, 2005. On the other hand, there is no indication in the record of Attorney Menashe's misrepresenting this fact in any way. Further, the record demonstrates that Attorney Menashe did cross-examine both Officer Dungey and Detective Whitacre about a police report as it relates to Count 1. Consequently, the petitioner has not demonstrated ineffective assistance of counsel as to this portion of his claim.

Further, in his second claim, petitioner asserts that his attorney did not interview or attempt to contact Raylene Riley, an alibi witness who would have testified concerning Count One. According to petitioner's affidavit, he instructed Ms. Menashe to contact Ms. Riley. To support his claim, petitioner has submitted the affidavit of Raylene Riley which states:

The statements that were made by police in court regarding Mr.

11

Jason King were not correct.

Mr. King and a friend came to my job (Quiznos) for lunch on the afternoon of June 1, 2005. Mr. King ordered his food and sat down waiting to eat. The friend asked to use Mr. King's car, which Mr. King complied. When the friend came back with the car; Mr. King and I got into the car to go over to my sisters house so that I can pick up some money. On the way back from my sister's house heading to Quiznos to drop me back off and pick his friend up who stayed back to eat. That is when Mr. King and I was stopped by a black male police officer. When the officer approached the vehicle he would not say why he stopped us. I began to get agitated because I thought it was just another stop to harass Mr. King. I was questioning the officer as to why he stopped us, because he did not give Mr. King a citation. He later said he stopped us for smoke coming from the tail pipe. Me and the officer exchanged words because the stop was bogus. I was told if I didn't stop arguing he will give Mr. King a ticket.

The reason I remember that day so vividly is because 1) I received money from my sister; 2) that was the only time I ever rode with Mr. King and got pulled over in his orange Impala; 3) I especially remember arguing with the male black officer who did not give Mr. King a citation on June 1, 2005. I was never contacted by Attorney Diane Menashe. I would have testified to these facts at the time of trial, if Attorney Diane Menashe had subpoenaed me to testify on Mr. King's behalf.

*Affidavit of Raylene Riley, attached to Petition.*

The failure to investigate or call a particular witness may constitute ineffective

assistance in violation of the Sixth Amendment. *See, e.g., Clinkscale v. Carter*, 375 F.3d

430, 443 (6th Cir. 2004) (collecting cases). But cases in which courts have found

ineffective assistance under those circumstances involved not only a complete failure on

the part of counsel to investigate the witness or even explain the failure to investigate,

12

but also a showing that the witness or witnesses whom counsel failed to investigate did, in fact, have favorable testimony to offer. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 356-57 (6th Cir. 2006); *Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005); *Clinkscale v. Carter*, 375 F.3d at 443. Such are not the circumstances here.

Attorney Menashe states in her affidavit that she was not aware of Raylene Riley until this habeas proceeding. *Menashe Affidavit, p. 2.* Further, Attorney Menashe states that, had she been aware of Ms. Riley, she would have attempted to interview her. *Id.*

The Court finds that Ms. Riley's testimony would have done little to assist petitioner in view of the other evidence submitted at trial as to Count One. Ms. Riley's statement that petitioner loaned his orange Impala to a friend for a brief period of time on the afternoon of June 1 seems to suggest that this friend could have been driving the car at the time of the drug transaction with Mr. Arnold. However, Mr. Arnold testified that he bought the drugs from petitioner. *Tr. 33.* Further, Detective Murphy testified that the orange car was followed on June 1 from the time of the drug transaction to the time of the stop by Officer Dungey. *Tr. 172.* Additionally, Officer Dungey testified that petitioner was driving the car in which Mr. Arnold testified that he and petitioner had completed the drug transaction and that the car was registered to petitioner. *Tr. 72-73.* Moreover, petitioner's counsel raised the issue of the car stopping at Quizno's while under surveillance and also raised the issue of two people being in the car. *Tr. 177-78.* In light of all of this testimony, petitioner has failed to establish the ineffective assistance of counsel under *Strickland* based on his attorney's failure to call Raylene

Riley as an alibi witness.

## CLAIM THREE

In his third claim, petitioner contends that Attorney Menashe failed to contact his mother, Amy Turner, and his sister, Valda King, as alibi witnesses relating to Count Two.  He has attached in support of this claim an affidavit from these individuals.

The affidavit of Amy Turner states as follows:

> The statements that were made by police in court regarding Mr. Jason King were not correct.  Mr. King was at home when I left for work on the morning of July 19, 2005, because when I went to drop his daughter Ja'Yona King off at the daycare she was screaming and hollering so I just took her back to the house and left her with him.  Mr. Jason King was also home when I went to the house for lunch that day from 12:00 pm to 1:00 pm.  I spoke with Jason King when I took my afternoon break at work from 3:00 pm to 3:15 pm, and I also spoke with his daughter, Ja'Yona King.  I know that he had been in contact with my daughter, Valda King, that day because a group of them were planning on hanging out that evening before his court date the next day (July 20, 2005).
>
> I would have testified to this at the time of the trial, if Attorney Diane Menashe had subpoenaed me to testify on his behalf.

*Affidavit of Amy Turner, attached to Petition.*

The affidavit of Valda King states as follows:

> The information that was presented in court by the police regarding Jason King was an inaccurate account.  The police made some statements regarding Mr. King's whereabouts on the date of July 19, 2005.  I know for a fact that Mr. King was at home earlier that day because I had spoken with him regarding his daughter, Ja'Yona King and her activities at day care that day.  I also had spoken with him at home around 3:30 to discuss our plans

14

> before I got off of work, because a group of us were going
> out that evening before his big court day on July 20, 2005
> and we weren't sure what the outcome would be.
>
> I was never called or subpoenaed on his behalf by his
> attorney, Diane Menashe, to testify or I would have
> testified to this at the time of the trial.

*Affidavit of Valda King, attached to Petition.*

Attorney Menashe asserts in her affidavit that petitioner did not tell her that his sister, Ms. King, had any information relevant for trial. *Menashe Affidavit, p. 2.* Further, Attorney Menashe contends that she communicated regularly with petitioner's mother, Ms. Turner and Ms. Turner did not offer to provide an alibi for petitioner nor did she indicate that her daughter might provide an alibi or helpful information. *Id.*

As with Ms. Riley's affidavit relating to Count One, these affidavits do little to assist petitioner in light of all the other testimony relating to Count Two. Detective Whitacre testified that he had the car in which Mr. Arnold bought the drugs under surveillance and that he saw petitioner inside. *Tr. 117.* Further, Detective Whitacre testified as follows about his identification of petitioner during the drug transaction on July 19:

> Q. Who did you see in the passenger seat of the Honda?
> A. Mr. King.
> Q. Any question in your mind about that?
> A. No, sir.
> ...
> Q. On July 19, why no arrest?
> A. Because I knew who Mr. King was. I expected to see Mr. King
> in the future in the same manner, but it didn't happen.
> ...

> Q.  Could you see the faces of the people in the car?
> A.  Yes, I could.

*Tr. 163, 164, and 166.*

Further, petitioner argues that Attorney Menashe did not contact the owner of the car involved in the Count Two transaction as an alibi witness.  In her affidavit, Attorney Menashe states that she made a strategic decision to not interview the owner of the car involved in Count Two. As stated by Attorney Menashe:

> It was clear from the discovery provided in this case that although the government had the license plate to said vehicle they never ran the plate - never identified the owner.  I saw this as evidence of bad police work and wanted to use their failure to fully investigate to Petitioner's advantage.  Thus, in my closing argument, I argued, '[a]nd you don't run the tag?  We don't call that woman to say where were you on July 19 of '05, do you know Jason King?  And when I say we don't, I mean the government.  Because that is their burden, and they failed.  They absolutely failed.'  (Vol. II, Pg. 223).

*Menashe Affidavit, p. 2.*

The Court does not find this to be an unreasonable trial strategy.  Moreover, in light of the evidence presented against petitioner as discussed above, the Court cannot conclude that petitioner was prejudiced by counsel's failure to pursue the owner of the car as an alibi witness.  Consequently, the petitioner has failed to demonstrate the ineffective assistance of counsel on this claim.

## CLAIM FOUR

Petitioner asserts that he was denied the effective assistance of counsel because

16

his attorney failed to allow him to testify on his own behalf.   According to petitioner, he informed Attorney Menashe that he wanted to testify because no other witnesses were being called for the defense.  In her affidavit, Attorney Menashe states that she thoroughly discussed the issue with petitioner prior to the close of the defense case and he decided not to testify based on his "extensive criminal history that would have been admissible under Evid.R. 609." *Menashe Affidavit, p. 3.*

Although a criminal defendant has a constitutional right to testify on his own behalf, the defendant must make the trial court aware of that desire or that a disagreement exists with defense counsel about whether he should take the stand. When a defendant does not take the stand, the defendant's assent is presumed.  *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).  In this case,  petitioner does not assert that he indicated to the trial court that he wished to testify on his own behalf.  Nor does the transcript demonstrate that petitioner made any attempt to make the trial court aware of any desire to testify.  Because petitioner did not make the trial court aware of his desire to testify or his disagreement with counsel over the issue, his waiver of the right to testify may be inferred.  Under these circumstances, his agreement with the decision not to testify is presumed.  Consequently, petitioner has not demonstrated the ineffectiveness of his trial attorney.

## CLAIM FIVE

Petitioner asserts, in the  fourth claim of his petition and in the fifth claim identified in his affidavit, that appellate counsel also was ineffective for failing to raise

17

on direct appeal the issue of the disparity between crack cocaine and powder cocaine. Assuming such an issue should have been raised on appeal, petitioner cannot establish prejudice under *Strickland*. Petitioner's subsequent counsel filed a motion pursuant to 18 U.S.C. §3582(c)(2) asking the Court to apply retroactively the revised crack guideline calculations. This resulted in a reduction of petitioner's offense level from 32 to 30. Further, the motion indicated that counsel for the United States and counsel for petitioner had agreed to recommend a reduction of petitioner's sentence. The trial court granted this motion and sentenced petitioner to a reduced term of 96 months imprisonment. Consequently, the record fails to reflect that petitioner was denied the effective assistance of appellate counsel.

**CLAIM SIX**

Petitioner's final claim appears to be that he and Attorney Menashe had difficulty communicating effectively to the point where he was unaware of any defense strategy prior to trial. Attorney Menashe's affidavit and the attached exhibit demonstrate that this claim is without merit. Attorney Menashe states in her affidavit that she spent 24.4 hours meeting with petitioner at the county jail. *Menashe Affidavit, p. 2.* The exhibit, a letter dated December 10, 2006, and delivered to petitioner by Attorney Menashe the day before trial, represents a confirmation of her previously discussed trial strategy to argue that the government could not meet its burden of proof. The letter states in relevant part:

Based on my review of all of the foregoing materials my

18

> strategy in this case will be to argue that the government
> can not prove beyond a reasonable doubt each and
> every element of the charges against you.  I told you
> some time ago that this was going to be the strategy I
> would present at trial and upon further consideration
> and reflection it remains the strategy that I intend to
> pursue on your behalf.  I believe, based on my experience
> and expertise, that this strategy has the largest chance of
> success given the facts and circumstances of this case.

*Exhibit to Menashe Affidavit.*

Attorney Menashe's letter refutes petitioner's claim that he was not informed of

counsel's trial strategy.  Petitioner has provided nothing to the contrary.  Further,

petitioner has not indicated any prejudice he suffered as a result of allegedly being

uninformed of the trial strategy.   Additionally, to the extent that petitioner is raising

any other communication issue, by petitioner's own admission, this issue was

addressed by the trial court and petitioner is not asserting any error or prejudice as a

result.  Under these circumstances, this ineffective assistance of counsel claim fails

under both prongs of the *Strickland* test.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that

petitioner's claims be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within

fourteen (14) days of the date of this report, file and serve on all parties written

objections to those specific proposed findings or recommendations to which objection is

made, together with supporting authority for the objection(s). A judge of this Court

shall make a *de novo* determination of those portions of the report or specified proposed

19

findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal, the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge